UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIN M. MARINE<br>    Plaintiff | *<br>*<br>* CASE NO. 17-10746 |
| VERSUS | *<br>* JUDGE MORGAN<br>* |
| WENDY'S INTERNATIONAL LLC ET AL<br>    Defendant | *<br>* MAGISTRATE JUDGE NORTH<br>*<br>*<br>* A JURY IS DEMANDED<br>*<br>* |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, come Defendants, Haza Foods of Louisiana, LLC ("Haza") and Wendy's International LLC ("Wendy's") (Collectively, "Defendants"), who respectfully submits this memorandum in support of its Motion for Summary Judgment. For the following reasons, no genuine issues of material fact exist, and Defendants are entitled to judgment as a matter of law.

**I.    FACTS AND BACKGROUND**

On September 8, 2017, plaintiff filed the instant suit in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, seeking damages allegedly arising out of a slip and fall at Wendy's located on Stumpf Boulevard in Gretna, Louisiana.[1] On October 17, 2017, Defendants file a Notice of Removal,[2] under 28 U.S.C. § 1332, based on diversity jurisdiction. Thereafter, on May 24, 2018, Plaintiff filed her First Amended Complaint against Defendants.[3]

---

[1] Exhibit "A", Petition for Damages"
[2] R. Doc.1
[3] R. Doc. 28

1

Plaintiff alleges that on or about April 14, 2017, she slipped and fell on "an unmarked slippery substance that can be identified as water and soap from a mopping that was performed by a Wendy's employee."[4] Plaintiff asserts her fall resulted from various acts of negligence on the part of Defendants.[5] She claims she suffered bodily injuries as a result of her fall.[6]

On March 7, 2018, Defendants deposed Plaintiff in this matter. Plaintiff testified she slipped as she walked to the condiment counter.[7] She claims that the area in which she slipped was damp.[8] However, she recalled no identifying information as to what was on the floor that allegedly made her slip and fall.[9]

Plaintiff further testified she possesses no information as to the identity the source of the substance in which she slipped or how the substance arrived on the floor.[10] Moreover, while Plaintiff alleges in her Amended Petition that the "slippery substance" was caused by an alleged mopping by a Wendy's employee, she possesses no information to suggest that a Wendy's employee was actually mopping or that a Wendy's employee caused, or was aware of, the liquid's presence prior to her fall.[11] Furthermore, Plaintiff possesses no information to suggest how long the liquid was on the floor prior to her fall.[12] Accordingly, Plaintiff produces no evidence that Defendants created the spill or that Defendants had actual or constructive notice of the spill before the incident.

---

[4] R. Doc. 28 at ¶6
[5] *Id*. at ¶7.
[6] *Id*. at ¶7.
[7] Exhibit "B", Plaintiff's Deposition, pp. 111-112.
[8] *Id*. at pp. 118.
[9] *Id*. at pp. 157.
[10] *Id*. at pp. 138.
[11] *Id*. at pp.116.
[12] *Id*. at pp. 138.

2

Moreover, Plaintiff cannot meet her burden of proving that Defendants failed to exercise reasonable care or that the condition created an unreasonable risk of harm. Here, Plaintiff testified that there was a wet floor sign posted in the area where she fell. As such, there is no issue of fact as to whether the condition created an unreasonable risk of harm as there was a floor sign posted in the area where Plaintiff fell. As such, Defendants are entitled to summary judgment as a matter of law.

## II. LAW AND ARGUMENT

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(b) provides that a party against whom a claim is asserted may, at any time, move with or without supporting affidavits for summary judgment in the party's favor. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13] Where the non-moving party will bear the burden of proof at trial on the dispositive issue; that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an essential element to that party's case in order to survive summary judgment.[14]

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt to the material facts.[15] The non-moving party must come forward with specific facts showing there is a genuine issue for trial.[16] The mere

---

[13] Federal Rule of Civil Procedure 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
[14] *Celotex*, 477 U.S. 322.
[15] *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).
[16] *Matsushita*, 475 U.S. 587, 106 S.Ct. 1356.

3

existence of a scintilla of evidence on the non-moving party's position is insufficient to defeat a properly supported motion for summary judgment.[17] The non-moving party must present evidence upon which a reasonable jury could reasonably find for the plaintiff.[18]

### B. Louisiana Revised Statute 9:2800.6

The question of whether or not summary judgment is proper is made with reference to the substantive law applicable to the case.[19] Under Louisiana law, a store owner has a duty to take reasonable care for the safety of its patrons, but the store is not the insurer of their safety.[20] Accordingly, the merchant has no duty to keep its entrances, aisles, and passageways in perfect condition.[21] Rather, the duty of the merchant to protect its customers from foreign substances is one of "reasonable care under the circumstances."[22]

La. R.S. 9:2800.6 legislatively codified the above cited jurisprudence, providing in pertinent part:

> A) A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous condition which reasonably might give rise to damage.
>
> B) In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, <u>the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:</u>
>
> > (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

---

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986).
[18] *Id.*
[19] *Penabler v. Blount*, 550 So. 2d 577 (La. 1989); *Adamson v. State Farm Mutual Automobile Insurance Co.*, *supra*.
[20] *Rodriguez v. New Orleans Public Service, Inc.*, 400 So. 2d 884 (La. 1981); *Crochet v. Hospital Service, District No. 1*, 476 So. 2d 516 (La. App. 1st Cir. 1985); *Miller v. McDonald's Corp.*, 439 So. 2d 561 (La. App. 1st Cir. 1983).
[21] *Smith v. Winn Dixie Stores of Louisiana, Inc.*, 389 So. 2d 900 (La. App. 4th Cir. 1980); *Stockwell v. Great Atlantic & Pacific*, 583 So. 2d 1186 (La. App. 1st Cir. 1991).
[22] *Robinson v. F.W. Woolworth Co.*, 420 So. 2d 737 (La. App. 4th Cir. 1982).

    (2)    The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence;

    (3)    The merchant failed to exercise reasonable care.

C)    Definitions:

    (1)    "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition

    (2)    "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants and lobby areas of or within the hotel, motel, or inn.

Accordingly, under La. R.S. 9:2800.6, Plaintiff must not only prove that she sustained damages as a result of a hazardous condition existing on the merchant's premises, but also that **"the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and, that the merchant failed to exercise reasonable care."**[23] Because fault of the merchant is not based on strict liability, Plaintiff cannot recover simply because there was a puddle on the floor in which she slipped. The plaintiff must also prove the defendant breached the duty of reasonable inspection and care of the premises.[24]

In *White v. Wal-Mart Stores, Inc.*,[25] the Louisiana Supreme Court addressed the question of constructive notice under La. R.S. 9:2800.6. The Court found the statute clearly and unambiguously contains no provision for shifting the burden to the defendant to prove his lack of

---

[23] La. R.S. § 9:2800.6. (emphasis added)
[24] *Id.*
[25] *White v. Wal-Mart Stores, Inc.*, 97-C-0393, (La. 9/9/97), 699 So. 2d 1081.

5

culpability.  Thus, plaintiff bears the burden to prove each element of his or her cause of action under La. R.S. 9:2800.6.  The Court further found that because the statute plainly defines constructive notice to include a mandatory temporal element, the plaintiff <u>must come forward with positive evidence</u> showing that the damage-causing condition existed for <u>some period of time prior to plaintiff's fall</u>, and that such time was sufficient to place the merchant defendant on notice of its existence.

In interpreting La. R.S. 9:2800.6, the Court further held that <u>at no point does the burden of proof shift to the defendant</u>.  The failure to prove any one of these elements negates a plaintiff's cause of action.[26]  Thus, a defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall.[27]  The *White* Court also stated that a claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice.[28]  Thus, the burden does not lie with Defendants to prove the liquid did not exist for a certain period of time prior to plaintiff's fall.  To the contrary, according to *White*, the burden rests with Plaintiff to make a positive showing that the condition existed for some time period prior to her fall.

The Supreme Court also discussed the liability of merchants for slip and falls in *Babin v. Winn Dixie of Louisiana, Inc.*[29]  Babin sued Winn Dixie for injuries he allegedly sustained when he slipped and fell on several plastic toothpick boxes. Plaintiff admitted in his deposition that he did not know how the toothpick boxes arrived on the floor, nor did he know how long they had

---

[26] *Davenport v. Albertson's, Inc.*, 774 So.2d 340, 343 (La.App. 3 Cir. 2000); *citing: White v. Wal-Mart*
[27] *Id*. at. 1084.
[28] *Id*.
[29] 764 So. 2d 37 (La. 6/30/00)

6

been on the floor before he fell.[30] The district court granted Winn Dixie's motion for summary judgment and the Court of Appeal reversed, speculating that plaintiff may be able to show there was a possibility the boxes had been on the floor for some period of time prior to the incident.

The Louisiana Supreme Court rejected the analysis of the Appellate Court, noting, "<u>such speculation falls far short of the factual support required to establish that plaintiff will be able to satisfy his evidentiary burden of proof at trial.</u>"[31] Plaintiff's speculation that the condition may have existed for some period of time prior to his fall was <u>not a "positive showing"</u> that the condition did exist for some time period prior to his fall. In sum, the Court held that a plaintiff must produce "factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial."[32] In the absence of such evidentiary support, summary judgment under La. R.S. 9:2800.6 is appropriate.

### C. Plaintiff Has No Evidence to Prove the Elements Required to Sustain a Claim Against Defendants Under Louisiana Law

As in the aforementioned cases, Plaintiff in the present case cannot prove Wendy's employees had actual notice of the condition, created the condition, or that the condition was on the floor for such a period of time that Defendants should have discovered it in the exercise of reasonable care.

In describing her fall, Plaintiff testified that she slipped as she walked toward the condiment counter.

> A: Yes. Walking towards the concession stand, once my foot passed where the end of the island is, my left foot made contact. When I went to walk, my right foot slide open likes a split move. I feel on my knee, on the right side, my elbow, and my hand. The drink that as in my hand, it went all over. I had some on me.[33]

---

[30] *Id*. at 38.
[31] *Id*. at 40, citing *White v. Wal-Mart Stores, Inc*. (emphasis added)
[32] *Id*.
[33] Exhibit B, Plaintiff's Deposition at pp. 109.

7

Following the fall, Plaintiff took a video of the area in which she slipped. The video, attached hereto as Exhibit "C", was authenticated by Plaintiff in her deposition testimony.

> Q: Okay. We were provided a video and some photographs I guess from your attorney. (Tenders ipad.)
>
> A: That was from my cell phone, yes.
>
> Q: Okay. You can identify this video?
>
> A: I took the video, yes.
>
> Q: Okay. And when was this video taken?
>
> A: At the time I stood up and saw that I had busted elbow and my knee. [34]
>
> \*\*\*
>
> Q: Okay. Is this video meant to depict the area where you fell?
>
> A: This video was showing my elbow and my knee, and I briefly glanced at the area that was on the right where the sign was.[35]
>
> \*\*\*
>
> Q: And you took this within seconds after the fall?
>
> A: Maybe like a minute after I got up, yeah.[36]

The video shows that the entire floor in the area of Plaintiff's fall was dry, albeit for a puddle of water next to a wet floor sign. However, Plaintiff concedes during her deposition that the puddle was caused by a drink that Plaintiff herself spilled at the time of the fall. [37]

> Q: Okay. And that bottle of water, that's not the area where you fell, is it?
>
> A: My foot made contact right there (indicating).
>
> Q: Okay.

---

[34] *Id.* at pp. 122-123.
[35] *Id.* at pp. 123.
[36] *Id* at pp. 124.
[37] The cup is referred to as a "water bottle" during the deposition testimony. It was later determined that the object was the cup Plaintiff was holding at the time of her fall.

8

A: And I fell toward that way. That puddle in question may be the actual drink that was in my hand when I fell because the drink was also on my shirt and on my pants.[38]

Plaintiff further testified that she did not slip in the puddle and actually slipped in an area right outside of the video.

Q: Okay. I understand that. I guess my question to you is: Do you know whether you slipped on the substance or this puddle?

A: No. This is where my feet made contact (indicating), and this is where I slipped (indicating). In this area (indicating). Not over here (indicating). That's why I'm telling you. When I fell, I did a split.

Q: Okay. I understand.

A: So the cup in my hand, it went down. Some of it went on me. That may be some of my drink. I'm not sure.[39]

***

Q: Okay. But I think we can agree that the puddle by this wet floor sign and where this water bottle is, which is depicted in the video that I'm showing you right now, which we'll mark as Exhibit 3 to this deposition…the puddle that's in this video is not where you slipped?

A: No, it's not. [40]

***

**Q: So that puddle depicted toward the center of this photo is not where you fell?**

**A: Correct.[41]**

Thus, despite the fact that the video produced by Plaintiff shows that the floor is dry, albeit for the puddle caused by Plaintiff spilling her own drink, Plaintiff testifies during her deposition that she slipped in a different puddle caused by an employee who had mopped the area.

Q: The whole area right here you're saying is a puddle?

---

[38] *Id.* at pp. 124.
[39] *Id.* at pp. 126.
[40] *Id.* at pp. 133.
[41] *Id.* at pp. 138.

9

A:     Yeah. The lady had mopped the entire area.[42]

However, Plaintiff testified that she did not actually see any Wendy's employee mopping or any employee actually carrying a mop.

Q:     Okay. Did you actually see her mopping?

A:     I saw her walk –when I was walking up, she was walking into the back.

Q:     Okay.

A:     … **I didn't see her mopping.** I knew she was mopping because the guy right there told me, "She had just mopped, and it wasn't a sign, like"—

Q:     Okay.

A:     Yeah.

Q:     And it was your feeling that the woman whom you saw walking into the back— first of all, was she carrying a mop?

A:     At the time, **I didn't see her carrying a mop**. I just saw her walk back. [43]

***

A:     I said I saw her walking towards the back. I didn't see her carrying anything.

Q:     Oh okay. So you didn't see her with a mop?

A:     No.

**Q:     You saw a person walking toward the back. At any point in time did you ever see an employee of Wendy's, someone who looked to be wearing a uniform, mopping the area where you fell?**

**A:     No. [44]**

Moreover, Shawn Wells, an alleged witness of Plaintiff's fall, also testified that he did not see any Wendy's employee mopping the area in which Plaintiff fell.

Q:     When you saw the lady, did you actually see the lady mopping?

---

[42] *Id.* at pp. 114.
[43] *Id.* at pp. 114.
[44] *Id.* at pp. 116.

10

A: **I didn't actually see the lady mopping.** I seen the lady—as I was walking by, I saw her pushing the mop bucket to the—

Q: Closet?

A: --Closet.[45]

Further, Shawn Wells' wife, Christine Billiot, also testified that she did not see anyone mopping in the area in which Plaintiff fell.

Q: And just for the clarity of the record, you saw a woman leaving the area with a mop?

A: Yes.

Q: Did you ever actually see the woman mopping the area—exact area where Ms. Marine fell?

**A: No... [46]**

Moreover, Wendy's employee, Loritha Houston also testified that no one had mopped the area where Plaintiff fell.[47]

Q: Do you understand that no one had mopped at the time—or the floor had not been freshly mopped at the time of the accident? [48]

\*\*\*

A: Yes. [49]

Further, Plaintiff testified that she did not actually see a puddle of water where she slipped on the floor.

Q: Okay. At any point in time even after your fall, did you see a round or circular area that was a puddle of water?

A: No, I saw where my foot initially made contact, it was—that area was damp. [50]

---

[45] Exhibit "D", Deposition of Shawn Wells, at pp. 26.
[46] Exhibit "E", Deposition of Christine Billiot, at pp. 14.
[47] Exhibit "F", Deposition of Loritha Houston, pp. 87, pp. 91.
[48] *Id.* at pp. 91.
[49] *Id.*
[50] Exhibit "B" Deposition of Plaintiff, pp. 118.

11

Moreover, Shawn Wells further testified that did not see a puddle in the area in which Plaintiff fell, instead the stated that the floor looked "shiny"

Q: Okay. And there was no big spilled puddle like you see there, correct?

A: The floor was wet. But, I mean, you could see it was glossy, but **I didn't see no puddle.** I mean, but I wasn't looking for one.[51]

\*\*\*

Q: And the area was just sort of glossy wet or ---

A: Shiny.

Q: Shiny?

A: But at the same time, I mean, I wouldn't know – I wouldn't know if it was fresh waxed or if it was wet basically.[52]

Further, Wendy's employee, Lorintha Houston, testified that there were no soapsuds on the floor where Plaintiff fell.[53] Further, she testified that Plaintiff's clothes were not wet after the incident.[54] Moreover, Ms. Houston testified that there was nothing on the ground that caused Plaintiff to fall.

Q: Okay. Did you see any other spill or other substance on the ground other than the puddle that was created by –

A: No.

Q: Let me finish -- by Ms. Marine spilling her drink?[55]

MRS. WATERS: Object to form.

THE WITNESS: No.

EXAMINATION BY MRS. TREW:

---

[51] Exhibit "D", Shawn Wells deposition, pp. 17.
[52] *Id.* at pp. 28.
[53] Exhibit "F", Deposition of Houston, at pp. 88.
[54] *Id.*
[55] *Id.* at pp. 89.

Q: Does the floor appear bone dry to you other than this puddle?

MRS. WATERS: Object to form.

THE WITNESS: Yes, ma'am.

EXAMINATION BY MRS. TREW:
Q: Do you see any soapsuds on the floor?

MRS. WATERS: Object to form.

THE WITNESS: No, ma'am.

EXAMINATION BY MRS. TREW:
**Q: It was your understanding there was nothing on the ground that caused Ms. Marine to fall, correct?**

MRS. WATERS: Object to form.

**THE WITNESS: No, ma'am.**[56]

Further, Plaintiff acknowledged that she cannot identify what the alleged substance was on the floor in which she slipped.

**Q: Okay. I guess my question to you is: Do you know what the substance on the floor was—**

**A: No.**

**Q: --that you fell in.**[57]

***

**Q: Okay. In the area where you fell, was there anything identifying about what was on the floor that would have told you what the substance was?**

**A: No.**

**Q: I mean, did you see any color to the floor or anything like that?**

**A: I didn't see anything. I was looking straight ahead as I walked and one step past the island with my left foot. As soon as my right foot made contact, I spilt and fell.**

---

[56] *Id.* at pp. 90.
[57] Exhibit "B" Deposition of Plaintiff at pp. 119.

> Q: You didn't see like soapy suds or anything like that on the floor, did you?
>
> A: Once again, no, I did not see anything on the floor. [58]

Like the plaintiff in *Babin,* the instant Plaintiff also testified in her deposition that she possesses no independent information regarding the source of the liquid or how long the liquid was on the floor before she slipped in it.

> Q: Okay. Do you know how long that substance that was on the floor that you believe caused you to slip and fall, how long it has been on the floor before you fell?
>
> A: No, I'm not sure.[59]
>
> Q: Okay. Do you know how long it got on the floor?
>
> A: I was just told by the witness that an employee had just mopped right before I walked up, and she walked into the back.[60]

Moreover, Plaintiff possesses no independent information to suggest that any Wendy's employee knew that the substance was on the floor prior to her fall or that any Wendy's employee caused the substance's presence on the floor. Further, she possesses no information as to how long the substance had been on the floor.

> Q: Do you know, Ms. Marine, other than what you just said you though you were told by another witness—let me ask you this: Do you have an independent information that anyone had mopped in the area where you fell before you fell?
>
> A: Not before I fell, no.[61]
>
> ***
>
> Q: And you don't know how that substance on the floor got there and how long it was there before you fell?
>
> A: No.

---

[58] *Id.* at pp. 157.
[59] *Id.* at pp. 119
[60] *Id.* at pp. 119.
[61] *Id.* at pp. 120.

14

Q: And independent of the witnesses, you don't know ether an employee put that water or substance on the floor if it would have possibly been an employee—I mean, a customer of the store, correct?

A: No. I'm not sure other than when I fell and got up, they, behind the counter was asking everyone who was mopping…

Q: Okay. But you never saw anyone mopping, and no one ever said that person was mopping, to your knowledge, correct?

A: No. I never saw anyone mopping…[62]

\*\*\*

Q: Okay. And the same questions I asked earlier dealing with the substance, you have no independent information to know what the substance was on the floor, how long it had been there, who put it there, and how long it got there, correct?

A: No.[63]

Thus, Plaintiff fails to prove the temporal element required to sustain her claim of actual or constructive notice of the alleged spill by Defendants. Plaintiff produces no evidence to create a "positive showing" that any Wendy's employee had actual notice of the condition, created the condition, or that the condition was on the floor for such a period of time that Defendants should have discovered it in the exercise of reasonable care. Plaintiff's deposition testimony clearly reveals her lack of evidence as she admits she has no information as to how the alleged liquid got on the floor, when it got on the floor, or how long it was present on the floor prior to her fall. The mere fact that Plaintiff slipped and fell on liquid on the floor in Wendy's and sustained injuries is insufficient to hold Defendants liable under La. R.S. 9:2800.6, as well as the jurisprudence of the

---

[62] *Id.* at pp. 121.
[63] *Id.* at pp. 138.

Louisiana Supreme Court. Accordingly, because Plaintiff cannot prove the elements necessary to meet her burden of proof at trial, summary judgment in favor of Defendants is appropriate.

> **D. There Is No issue of Fact as to Whether the Condition Created an Unreasonable Risk of Harm as it Is Undisputed That Wet Floor Signs Were Posted in The Area of The Fall**

Merchants are required to exercise reasonable care to protect those who enter the store, keep the premises safe from unreasonable risks of harm and warn persons of known dangers.[64] A store owner is not liable every time an accident happens.[65] Louisiana jurisprudence has specifically found that a condition does not create an unreasonable risk of harm **when the appropriate signage is used to warn patrons of the condition of the floor.**[66] Where the defendant merchant establishes that it placed a wet floor sign where a spill exists, the defendant merchant is entitled to summary judgment. [67]

As set forth above, Louisiana jurisprudence provides that a merchant exercises reasonable care and a condition does not create an unreasonable risk of harm if a wet floor sign is present in an area that has been recently mopped. *Rowell v. Hollywood Casino Shreveport*, 996 So.2d 476 (La. App. 2 Cir. 2008); *Lee v. Ryan's Family Steak Houses, Inc.*, 960 So.2d 1042 (La. App. 1 Cir. 2007). In *Rowell v. Hollywood Casino Shreveport,* Ms. Rowell slipped and fell in the women's bathroom of the Hollywood Casino. [68] The Second Circuit Court of Appeal upheld summary judgment for the defendants, finding that the casino was not responsible for injuries sustained by

---

[64] *Turner v. Brookshire Grocery Co.,* 785 So.2d 161, 164 (La. App. 2 Cir. 2001)(Court affirmed trial court's judgment for defendant who utilized reasonable procedures for protecting customers from tracked in rain water by placing a caution wet floor sign near the entrance and periodically mopping the area).
[65] *Id.;* see also *Ward v. ITT Specialty Risk Services, Inc.,* 739 So.2d 251 (La. App. 2 Cir. 1999)(Court affirmed verdict for defendant where defendant had wet floor sign approximately three feet from area where plaintiff fell).
[66] *Melancon v. Popeyes Famous Fried Chicken,* 59 So.3d 513, 515 (La. App. 3 Cir. 2011); *Rowell v. Hollywood Casino Shreveport,* 996 So.2d 476 (La. App. 2 Cir. 2008); *Lee v. Ryan's Family Steak Houses, Inc.,* 960 So.2d 1042 (La. App. 1 Cir. 2007).
[67] See *Id.*
[68] *Rowell v. Hollywood Casino Shreveport,* 996 So.2d 476 (La. App. 2 Cir. 2008).

a patron who slipped and fell in water in the casino's bathroom, where photographs showed wet floor signs near the drain in the middle of the bathroom floor, between the stalls and the sink area, the cone was resting in close proximity to where the patron fell, just outside of the stall. [69] Further, in *Rowell*, the handwritten description on the photographs indicated that the patron was lying next to the wet floor cone when she was first seen by casino employee. [70]

Moreover, i*n Lee v. Ryan's Family Steak Houses, Inc.*, the First Circuit Court of Appeal held that the trial court's apportionment of 80% liability on the store was manifestly erroneous and reversed the trial court's decision dismissing the plaintiff's claims against the defendant In so holding, the Court of Appeal wrote: "We find that an approximately three-foot-high yellow warning cone containing the universal symbol for a wet floor to be adequate to alert a patron of a hazardous condition." [71] The plaintiff in *Lee* actually walked within a foot or two of the warning cone toward the food bar and then returned in the same way she came and fell "right alongside the warning cone." [72]

In this case, Plaintiff testified during her deposition that there was a wet floor sign in the area when she fell.[73] Further, Plaintiff's illustration of the restaurant, drawn by Plaintiff during her deposition, confirms the presence of the wet floor sign.[74] Moreover, Plaintiff further testified that the wet floor sign, present at the time of her fall, was a foot and a half from the corner of the island.

> Q: What would you estimate the distance between the corner of the island and where that wet floor sign is?
>
> A: Maybe like—
>
> Q: Two or three steps?

---

[69] *Id.*
[70] *Id.* (emphasis added).
[71] *Id.* at 1047.
[72] *Id.*
[73] Exhibit "B", Plaintiff's Deposition testimony at pp. 140, 142-143, 146.
[74] *Id.* at Exhibit "2".

A: No.

Q: 5 feet?

A: No. Maybe like a foot and a half or something?[75]

Further, Wendy's employee, Lorinthia Houston, testified that the wet floor sign was present in the area, before Plaintiff's fall.

Q: Okay. And in this wet floor sign. Do you remember how long it was – or if it was there before the accident? [76]

\*\*\*

**A: Before. It was raining that day. It was before.**

Q: Was there any rainwater on the ground?

A: No, ma'am. [77]

Further, Plaintiff's safety expert, Russell Kendzior, testified that if there was a caution wet floor sign posted within one to two feet of where the wetted area was, it would be a reasonable distance. [78]

Thus, as in *Rowell* and *Lee,* Plaintiff cannot meet her burden of proving that Defendants failed to exercise reasonable care or that the condition created an unreasonable risk of harm. Here, Plaintiff testified that there was a wet floor sign posted in the area where she fell. Further, employee, Lorintha Houston, testified that the wet floor sign was present in the area before Plaintiff's fall. As such, there is no issue of fact as to whether the condition created an unreasonable risk of harm as there was a floor sign posted in the area where Plaintiff fell. As such, this Court should grant summary judgment in favor of Defendants.

---

[75] *Id.* at pp. 141.
[76] Exhibit "F", Deposition of Houston, at pp. 89.
[77] *Id.*
[78] Exhibit G, Deposition testimony of Russell Kenzior, pp. 77-78.

### III. CONCLUSION

For the aforementioned reasons, no genuine issues of material fact exist, and Defendants are entitled to judgment as a matter of law on Plaintiff's claims brought pursuant to La. R.S. 9:2800.6. The jurisprudence on the amount of proof required to defeat a summary judgment in a slip-and-fall case is clear. Because Plaintiff cannot produce a "positive showing" that Defendants had actual or constructive notice of the liquid on the floor, summary judgment in favor of Defendants is appropriate in this matter. No genuine issues of material fact exist as the Plaintiff fails to provide positive evidence as to an essential element of her claim.

Moreover, Plaintiff cannot meet her burden of proving that Defendants failed to exercise reasonable care or that the condition created an unreasonable risk of harm. Here, Plaintiff testified that there was a wet floor sign posted in the area where she fell. As such, there is no issue of fact as to whether the condition created an unreasonable risk of harm as there was a floor sign posted in the area where Plaintiff fell.

Accordingly, this Honorable Court should grant summary judgment in this matter, dismissing Plaintiff's claims against Defendants with prejudice.

WHEREFORE, Defendants, Haza Foods of Louisiana, LLC and Wendy's International LLC respectfully prays this Honorable Court grant summary judgment in its favor dismissing all of plaintiff's claims against it, with prejudice, at plaintiff's cost.

Respectfully submitted,

/s/ *Lindsay G. Faulkner*
**PETER J. WANEK (23353)**
**TREVOR C. DAVIES (32846)**
**KATHRYN T. TREW (34116)**
**LINDSAY G. FAULKNER (33863)**
1340 Poydras St., Ste. 1810
New Orleans, LA 70112
Telephone: (504) 324-6493

> Facsimile: (504) 324-6626
> ATTORNEYS FOR DEFENDANT
> *Haza Foods of Louisiana, LLC and Wendy's International LLC*

## **CERTIFICATE OF SERVICE**

I do hereby certify that on this 18th day of March, 2019 a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system. I also certify that a copy of the foregoing will be sent to all non-CM/ECF participants by United States Mail, properly addressed and postage prepaid.

> */s/ Lindsay G. Faulkner*
> Lindsay G. Faulkner